KM

WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Tommy D. Drew,

               Plaintiff,

v.

Theodora Paul, et al.,

               Defendants.

No.   CV 21-01488-PHX-MTL (ESW)

**ORDER**

Pending before the Court is Plaintiff Tommy D. Drew's October 4, 2021 Second Amended Complaint (Doc. 11).  The Court will order Defendants Furar, Paul, and Young to answer the Second Amended Complaint and will dismiss the remaining Defendants without prejudice.

**I.     Procedural Background**

On August 30, 2021, Plaintiff, who is confined in the Arizona State Prison Complex-Lewis, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed In Forma Pauperis.  On September 13, 2021, Plaintiff filed a First Amended Complaint.  In a September 24, 2021 Order, the Court granted the Application to Proceed and dismissed the First Amended Complaint with leave to amend.  Plaintiff filed the Second Amended Complaint on October 4, 2021.

. . . .

. . . .

TERMPSREF

## II.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

1

### III.    Second Amended Complaint

2

Plaintiff names the following Defendants in his one-count Second Amended

3 Complaint: Site Medical Director Theodora Paul; Medical Provider Renae Furar; Director

4 of Nursing Donna Mendoza; Medical Providers Nicole Johnson, Lillian Davod, Xiao-Ke

5 Gao, and Michelle Jennings; Nurses Jessica Gonzalez, Nivia Campa, Michelle Bryniak,

6 Marcella Aumack, Melissa Michel, Angela White, Christina Robles, Oyuki Coronado,

7 Sarah Ziegler, and Anita Benavidez; and Regional Medical Director Young.  Plaintiff seeks

8 declaratory, injunctive, and monetary relief.

9

Plaintiff's alleges violations of his Eighth Amendment right to adequate medical

10 care.   In 2016, Plaintiff began experiencing excruciating and debilitatingly painful

11 headaches.  (Doc. 11 at 4.)[1]  He was prescribed Imitrex, Excedrin, indomethacin, Tylenol

12 III, ibuprofen, and Toradol injections "after he began bringing his pain and suffering to the

13 attention of the ASPC-Lewis medical staff."   (*Id.*)   Plaintiff alleges none of these

14 medications has alleviated his pain and "subsequently, in order to attain relief from the

15 constant excruciating and sometimes debilitating pain . . ., he began self-medicating with

16 heroin." (*Id.*)

17

On February 4, 2020, Defendant Furar examined Plaintiff and ordered a CT

18 scan. (*Id.* at 5.)  Plaintiff informed Furar that the Excedrin had no effect in alleviating his

19 pain and "departed from his examination [still] suffering excruciating pain . . . ." (*Id.*)  For

20 the entire month of March 2020, Plaintiff suffered "excruciating pain" and his Health

21 Needs Requests (HNRs) were ignored.  (*Id.*)

22

On April 2, 2020, Defendant Furar again examined Plaintiff and Plaintiff again

23 informed her that the Excedrin "did nothing."  (*Id.* at 6.)  Defendant Furar told Plaintiff,

24 "you're a liar," and refused to prescribe Plaintiff an alternative treatment to alleviate the

25 pain. (*Id.*)  On May 4, 2020, Plaintiff again informed Furar that the Excedrin was "doing

26 nothing" to stop his pain, and Furar again "indicated to [Plaintiff] she did not believe

27

28

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

him." (*Id.* at 6, 7.)

On May 5 and 12, 2020, Plaintiff spoke with Defendant Nurse Gonzalez regarding his HNRs. Gonzalez refused to refer him to a medical provider and "accused him of malingering and ordered Plaintiff [to] be immediately returned to his housing unit." (*Id.* at 7.)

On June 23, 2020, Defendant Campa saw Plaintiff and "avoided all discussion" concerning Plaintiff's pain. (*Id.* at 8.) On June 29, 2020, "in relation to Campa's referral," Defendant Furar met with Plaintiff and accused him of lying about his pain. (*Id.*)

On July 20, 2020, Plaintiff had a CT scan that revealed a "small arachnoid cyst in the left middle cranial fossa with low-attenuation in the right sphenoid bone measuring 17x10 mm." (*Id.* at 9.) Plaintiff asserts that according to the National Institute of Health, an untreated arachnoid cyst may cause permanent severe neurological damage "when progressive expansion of the cyst or bleeding into the cyst injures the brain or spinal cord." (*Id.*)

On August 17, 2020, Plaintiff filed an Inmate Informal Complaint Resolution. On September 11, 2020, Defendant Mendoza responded, omitting "all mention of the fact of the excruciating pain inside [Plaintiff's] skull." (*Id.* at 10.)

From September 2020 through January 2021, Plaintiff filed multiple HNRs relating to his pain. From October 2020 through January 2021, Plaintiff was seen thirteen times "by various named Defendants, and on each occasion[,] Plaintiff was accused of fabricating his claim that he was suffering from excruciating pain inside his skull, that began in 2016." (*Id.*)

On January 28, 2021, Plaintiff collapsed as a result of his pain and an Incident Command System (ICS) was called. Defendants Bryniak and Aumack examined Plaintiff, ignored his "pleas to assist him with the excruciating pain inside his skull," and referred him to Defendant Mendoza. (*Id.*) Defendant Mendoza informed Plaintiff that she was not going to do anything to treat Plaintiff's pain. (*Id.* at 11.) On January 29, 2021, Defendant Michel met with Plaintiff and refused to treat Plaintiff's pain. (*Id.*)

On February 9, 2021, Plaintiff again collapsed from pain and another ICS was called.  (*Id.*)  Defendant Bryniak met with Plaintiff regarding the pain.  On February 10, 2021, Defendant White ordered Plaintiff to be "fed in-house."  (*Id.*)  On February 15, 2021, Defendant Campa met with Plaintiff and refused to "provide any form of treatment" for Plaintiff's pain.  (*Id.*)

On February 18, 2021, Defendant Paul examined Plaintiff and administered two Tylenol III pills, an injection into Plaintiff's left shoulder, and an injection behind each of Plaintiff's ears.  (*Id.* at 12.)  Plaintiff suffered a reaction to the injections behind his ears, two "golf ball sized knots developed," and Plaintiff was taken to the hospital.  (*Id.*)  Plaintiff claims that at the hospital, the treating physician stated, "why the hell would she give you injections at the back of your scalp?"  (*Id.*)  On February 19, 2021, after Plaintiff returned from the hospital, Defendant Davod examined Plaintiff, accused him of malingering, and refused to treat him.  (*Id.* at 13.)  On February 27, 2021, Plaintiff met with Defendant Coronado who accused him of malingering and refused to treat him.  (*Id.*)

Plaintiff submitted an Inmate Grievance.  On March 9, 2021, Defendant Mendoza responded, stating Plaintiff had seen Defendant Paul on February 18, 2021, was sent to the hospital for evaluation on February 19, saw "a different provider" on February 27, had "a neuro consult in place," and was "scheduled soon to be evaluated and to determine next step."  (*Id.* at 14.)  On March 9, 2021, Defendant Gao met with Plaintiff "through digital means," and wrote in his records that Plaintiff's cyst "has no clinical significance." (*Id.*)

On March 10, 2021, Plaintiff again collapsed due to pain and an ICS was called.  (*Id.*)   Defendant Bryniak examined Plaintiff and informed Plaintiff there was nothing wrong with him.  (*Id.*)  Another ICS was activated for Plaintiff on March 12, 2021, after which Defendant Michel examined him.  (*Id.* at 15.)  Defendant Michel told Plaintiff, "you need to stop, we're not gonna give you any drugs."  (*Id.*)  On March 23, 2021, another ICS was activated for Plaintiff after which Defendant Ziegler met with Plaintiff and informed him "that he was not suffering from the excruciating pain in his skull . . . ." (*Id.*)

On April 12, 2021, an ICS was activated after Plaintiff collapsed.  Plaintiff met with

ADW and five other officials from the prison and "medical departments." (*Id.* at 21.) Defendant Paul stated Plaintiff was fabricating is claims regarding his pain and suggested Plaintiff seek mental health treatment. (*Id.*) Coleman warned Plaintiff that if he continued seeking treatment for his pain, he would face disciplinary action. (*Id.*) On July 23, 2021, Plaintiff met with a Mental Health Assistant, who informed Plaintiff she could do nothing to stop Plaintiff's pain. (*Id.* at 22.) On July 30, 2021, Plaintiff submitted an HNR "begging for a neurological examination." (*Id.*) Defendant Mendoza responded by stating that Plaintiff's medical concerns were addressed at his meeting with the site medical director and that if he disagreed with Defendant Paul's plan of care, he should submit his concerns in a grievance. (*Id.*)

On September 9, 2021, Defendant Davod informed Plaintiff that Defendant Young denied Plaintiff's request for a consultation with a neurological specialist. (*Id.* at 23.) On September 27, 2021, Plaintiff met with a Mental Health Assistant who informed Plaintiff "that because the cyst on [Plaintiff's] brain was a physical issue and not a matter rooted in psychology, there existed no form of treatment whereby [the Mental Health Assistant] could begin to staunch the excruciating pain." (*Id.*) Plaintiff asserts he continues to suffer excruciating pain "twenty-four hours each and every day." (*Id.*)

## IV.   Claims for Which an Answer Will be Required

Liberally construed, Plaintiff as adequately stated Eighth Amendment medical claims against Defendants Furar, Paul, Young, and Mendoza. The Court will require these Defendants to answer the Second Amended Complaint.

## V.   Failure to State a Claim

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th

_____

Coleman in the "Defendants" section of the Second Amended Complaint or explain who Coleman is.

Cir. 2006).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.  *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially

pled. *Id.*

### A.   Medical Providers

#### 1.   Johnson

Plaintiff alleges Defendant Johnson ordered a nurse to "terminate treatment" on May 30, 2021, and, on June 15, 2021, discontinued Plaintiff's prescription for Gabapentin after Plaintiff tested positive for opiates.  Plaintiff's allegations are too vague to state a claim against Defendant Johnson.   Plaintiff does not allege what specific treatment Defendant Johnson discontinued in May 2021.  With respect to Plaintiff's Gabapentin prescription, Plaintiff does not allege Defendant Johnson was aware, before discontinuing Gabapentin, that treating Plaintiff's seizures with Keppra would be insufficient.  Plaintiff claims he started to experience seizures after being switched to Keppra, but Plaintiff does not claim that he told Johnson, or any other provider, of his increase in seizures, and that Johnson failed to act.  Plaintiff has failed to state a claim against Defendant Johnson and he will be dismissed.

#### 2.   Gao

Plaintiff's only allegation concerning Defendant Gao is that he met with Gao through a "digital" appointment and Gao wrote in Plaintiff's records that his  cyst had "no clinical significance."   These allegations are insufficient to show Defendant Gao was deliberately indifferent to Plaintiff's serious medical needs, and the Court will therefore dismiss Defendant Gao.

#### 3.   Davod

Plaintiff claims Defendant Davod "refused to treat" him on February 19, 2021, after Plaintiff's return from the hospital; was present at the April 20, 2021 meeting with Defendant Paul; and informed Plaintiff, on September 9, 2021, that Defendant Young had denied Plaintiff a neurological consult.

These allegations are insufficient to show Defendant Davod was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff does not allege whether the hospital provided discharge instructions or prescribed medication, or whether Defendant

Davod "refused" some other type of unspecified treatment after Plaintiff returned from the hospital. With respect to the April 20, 2021 meeting, Plaintiff claims Defendant Paul, not Davod, denied his request for a neurological consultation at that meeting. Finally, Plaintiff's claim that Davod informed Plaintiff of Defendant Young's decision to deny a neurological consultation indicates Young, not Davod, was responsible for denying the consultation. The Court will dismiss without prejudice Defendant Davod.

### 4. Jennings

Plaintiff claims that on May 22, 2021, Defendant Jennings told him he would "do nothing" for Plaintiff's pain and, on June 7, 2021, Jennings "made no effort" to treat Plaintiff's pain. These allegations are too vague to state a claim. Plaintiff does not allege what information he provided to Jennings or describe what treatment he requested. The Court will dismiss without prejudice Defendant Jennings.

### B. Nurses

Although Plaintiff alleges the defendant nurses (Gonzalez, Campa, Bryniak, Aumack, Michel, White, Robles, Coronado, Ziegler, and Benavidez) accused him of malingering and refused to treat him, Plaintiff does not allege that any of the defendant nurses had authority to give Plaintiff medication or treatment not already prescribed by a doctor or physician's assistant and Plaintiff does not allege that any of the defendant nurses denied him prescribed medication or treatment. Plaintiff's claims against the nurses are insufficient to state Eighth Amendment claims and the Court will therefore dismiss them without prejudice.

## VI. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

1

### B. Address Changes

2    Plaintiff must file and serve a notice of a change of address in accordance with Rule

3    83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other

4    relief with a notice of change of address.  Failure to comply may result in dismissal of this

5    action.

6

### C. Copies

7    Because Plaintiff is currently confined in an Arizona Department of Corrections unit

8    subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy

9    of every document he files or to submit an additional copy of every filing for use by the

10   Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule

11   of Civil Procedure 5.4.  Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by

12   including, with every document he files, a certificate of service stating that this case is

13   subject to General Order 14-17 and indicating the date the document was delivered to

14   prison officials for filing with the Court.

15   **If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he

16   will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a

17   copy of every document that he files, and include a certificate stating that a copy of the

18   filing was served; and (b) submit an additional copy of every filing for use by the Court.

19   *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing

20   being stricken without further notice to Plaintiff.

21

### D. Possible Dismissal

22   If Plaintiff fails to timely comply with every provision of this Order, including these

23   warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*,

24   963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure

25   to comply with any order of the Court).

26   **IT IS ORDERED:**

27   (1)    Defendants Johnson, Gonzalez, Campa, Bryniak, Aumack, Michel, White,

28   Robles, Davod, Gao, Jennings, Coronado, Ziegler, and Benavidez are **dismissed** without

1  prejudice.

2      (2)    Defendants Furar, Paul, Young, and Mendoza must answer the Second

3  Amended Complaint.

4      (3)    The Clerk of Court must send Plaintiff this Order, and a copy of the

5  Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request

6  for Waiver of Service of Summons form for Defendants Furar, Paul, Young, and Mendoza.

7      (4)    Plaintiff must complete[1] and return the service packet to the Clerk of Court

8  within 21 days of the date of filing of this Order.  The United States Marshal will not

9  provide service of process if Plaintiff fails to comply with this Order.

10     (5)    If Plaintiff does not either obtain a waiver of service of the summons or

11 complete service of the Summons and Second Amended Complaint on a Defendant within

12 90 days of the filing of the Complaint or within 60 days of the filing of this Order,

13 whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R.

14 Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

15     (6)    The United States Marshal must retain the Summons, a copy of the Second

16 Amended Complaint, and a copy of this Order for future use.

17     (7)    The United States Marshal must notify Defendants of the commencement of

18 this action and request waiver of service of the summons pursuant to Rule 4(d) of the

19 Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this

20 Order.

21     (8)    A Defendant who agrees to waive service of the Summons and Second

22 Amended Complaint must return the signed waiver forms to the United States Marshal, not

23 the Plaintiff, **within 30 days of the date of the notice and request for waiver of service**

24 pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of

25 personal service.

26         [1]If a Defendant is an officer or employee of the Arizona Department of Corrections,
27 Plaintiff must list the address of the specific institution where the officer or employee
   works.  Service cannot be effected on an officer or employee at the Central Office of the
28 Arizona Department of Corrections unless the officer or employee works there.

(9)    The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)    personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10)   Defendants must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11)   Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

. . . .

. . . .

. . . .

. . . .

. . . .

(12)    This matter is referred to Magistrate Judge Eileen S. Willett pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 8th day of November, 2021.

Michael T. Liburdi

Michael T. Liburdi
United States District Judge